**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SEDRIC CATCHINGS *et al.*, Individually and on behalf of a class of similarly situated persons, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | | Case No.: 1:21-cv-00428-TSE |
| | * | |
| CALVIN WILSON, In his official capacity as Warden, Chesapeake Detention Facility Department of Corrections, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................ 1

CLASS DEFINITION ..................................................................................................... 1

BACKGROUND .............................................................................................................. 3

SUMMARY OF ARGUMENT ........................................................................................ 4

ARGUMENT .................................................................................................................... 7

    I.     Plaintiffs Satisfy Rule 23(a): They Are Numerous and Raise Common Questions, and the Named Plaintiffs Are Adequate Representatives with Typical Claims ..... 9

          A.     Numerosity is Satisfied: The Class and Subclasses Each Include Hundreds of Members. ........................................................................................... 9

          B.     Commonality is Satisfied: The Legality of Defendant's Response to the Pandemic Involves Numerous Common Questions of Fact and Law. ..... 10

          C.     Typicality is Satisfied: The Named Plaintiffs' Claims Are Representative of Those of the Classes and Subclass at Large. ........................................ 14

          D.     The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes and Subclass. ........................................................................ 15

    II.    Certification of the Classes and Subclass for Prospective Relief is Appropriate Under Fed. R. Civ. P. 23(b)(2)............................................................................... 17

    III.   Undersigned Counsel Should Be Appointed Class Counsel Under Rule 23(g). .. 18

CONCLUSION................................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadia-Peixoto v. United States Dep't of Homeland Sec.*,
   277 F.R.D. 572 (N.D. Cal. 2011) ...............................................................12

*Adderly v. Wainwright*,
   58 F.R.D. 389 (M.D. Fla. 1972) ...................................................................4

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ......................................................................16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000) .........................................................................15

*Banks v. Booth*,
   468 F. Supp. 3d 101 (D.D.C. 2020), *reconsideration denied sub nom. Banks*,
   No. CV 20-849(CKK), 2021 WL 260112 (D.D.C. Jan. 26, 2021) (appeal
   pending) .........................................................................................................6

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ........................................................................7

*Bijeol v. Benson*,
   513 F.2d 965 (7th Cir. 1975) ........................................................................4

*Bradley v. Harrelson*,
   151 F.R.D. 422 (M.D. Ala. 1993) ...............................................................18

*Brady v. Thurston Motor Lines*,
   726 F.2d 136 (4th Cir. 1984) ........................................................................9

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ......................................................................14

*Brown v. Nucor Corp.*,
   576 F.3d 149 (4th Cir. 2009) ......................................................................14

*Brown v. Plata*,
   563 U.S. 493 (2011) ....................................................................................18

*Bumgarner v. NCDOC*,
   276 F.R.D. 452 (E.D.N.C. 2011) ................................................................17

*Butler v. Suffolk Cnty.*,
   289 F.R.D. 80 (E.D.N.Y. 2013) ...........................................................................12

*Carranza v. Reams*,
   __ F. Supp. 3d __, 2020 WL 2320174 (D. Colo. May 11, 2020) ...............................6

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   143 F.R.D. 628 (D.S.C. 1992), *aff'd*, 6 F.3d 177 (4th Cir. 1993)............................11

*Coreas v. Bounds*,
   458 F. Supp. 3d 352 (D. Md. 2020) .........................................................................6

*Coreas v. Bounds*,
   No. 20-CV-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020)..........................6, 12

*Cox v. McCarthy*,
   829 F.2d 800 (9th Cir.1987) ....................................................................................4

*Criswell v. Boudreaux*,
   No. 20-CV-01048-DAD-SAB, 2020 WL 5235675 (E.D. Cal. Sept. 2, 2020) .........6

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*,
   375 F.2d 648 (4th Cir. 1967) ...................................................................................9

*Deiter v. Microsoft Corp.*,
   436 F.3d 461 (4th Cir. 2006) .................................................................................15

*Diaz v. Hott*,
   297 F. Supp. 3d 618 (E.D. Va. 2018), *aff'd sub nom. Guzman Chavez v. Hott*,
   940 F.3d 867 (4th Cir. 2019) ...............................................................................4, 5

*Epps v. Levine*,
   457 F. Supp. 561 (D. Md. 1978) ............................................................................12

*Fraihat v. U.S. Immigration & Customs Enf't*,
   445 F. Supp. 3d 709 (C.D. Cal. 2020) .....................................................................6

*Gen. Tel. Co. of Southwest. v. Falcon*,
   457 U.S. 147 (1982).................................................................................................14

*Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*,
   No. 20-CV-453-LM, 2020 WL 2113642 (D.N.H. May 4, 2020) .............................6

*Gratz v. Bollinger*,
   539 U.S. 244 (2003)...................................................................................................7

*Hiatt v. Cty. of Adams, Ohio*,
   155 F.R.D. 605 (S.D. Ohio 1994) .............................................................................8

*Hughes v. Judd*,
   2013 WL 1821077 (M.D. Fla. Mar. 27, 2013) ....................................................12

*Inmates of Attica Corr. Facility v. Rockefeller*,
   453 F.2d 12 (2d Cir. 1971)..............................................................................4

*Int'l Woodworkers of Am. AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
   659 F.2d 1259 (4th Cir. 1981) .........................................................................11

*Johnson v. Jessup*,
   381 F. Supp. 3d 619 (M.D.N.C. 2019) ............................................................12

*Jones 'El v. Berge*,
   374 F.3d 541 (7th Cir. 2004) ..........................................................................18

*Jones v. Diamond*,
   519 F.2d 1090 (5th Cir. 1975) ........................................................................18

*Jones v. Guzman*,
   296 F.R.D. 416 (E.D. La. 2013).....................................................................12

*Kirkpatrick J.C. Bradford & Co.*,
   827 F.2d 718, 726 (11th Cir. 1987) .................................................................19

*Baby Neal ex. rel. Kanter v. Casey*,
   43 F.3d 48 (3d Cir. 1994)..............................................................11, 14, 18

*Lienhart v. Dryvit Sys., Inc.*,
   255 F.3d 138 (4th Cir. 2001) ..........................................................................14

*Longo v. Trojan Horse Ltd.*,
   208 F. Supp.3d 700 (E.D.N.C. 2016)..............................................................16

*M.D. v. Perry*,
   294 F.R.D. 7 (S.D. Tex. 2013).......................................................................12

*Marcera v. Chinlund*,
   595 F.2d 1231 (2d Cir. 1979), *vacated on other grounds*, *Lombard v.*
   *Marcera*, 442 U.S. 915 (1979).......................................................................17

*Martinez-Brooks v. Easter*,
   459 F. Supp. 3d 411 (D. Conn. 2020)..............................................................6

*Middendorf v. Henry*,
   425 U.S. 25 (1976)........................................................................................4

*Olson v. Brown*,
   284 F.R.D. 398..............................................................................................12

*Olvera-Morales v. Int'l Labor Mgmt. Corp. Inc*,
    246 F.R.D. 250 (M.D.N.C. 2007) ....................................................16

*Parsons v. Ryan*,
    289 F.R.D. 513 (D. Ariz. 2013) ....................................................12

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015). Civil ....................................................11

*Rodger v. Elec. Data Sys. Corp.*,
    160 F.R.D. 532 (E.D.N.C. 1995) ....................................................9

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ....................................................4

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ....................................................7

*Rosas v. Baca*,
    2012 WL 2061694 ....................................................12

*Ross v. Gossett*,
    2020 WL 1472072 ....................................................12

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) ....................................................18

*Savino v. Souza*,
    453 F. Supp. 3d 441 (D. Mass. 2020) ....................................................6

*Schall v. Martin*,
    467 U.S. 253 (1984) ....................................................4

*Scott v. Clarke*,
    61 F. Supp. 3d 569 (W.D. Va. 2014) ....................................................14, 18

*Shipes v. Trinity Industries*,
    987 F.2d 311 (5th Cir. 1993) ....................................................14

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ....................................................13

*United States v. Goforth*,
    Case No. 1:20-cr-00319-CCB-1 (D. Md. Feb. 19, 2021), ECF No. 33 ....................................................8

*Wal-Mart Stores Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................11-13

*Whitted v. Easter*,
No. 20-CV-00569-MPS, 2020 WL 4605224 (D. Conn. Aug. 11, 2020) ................................12

*Williams v. Richardson*,
481 F.2d 358 (8th Cir. 1973) ...........................................................................................4

*Wilson v. Williams*,
961 F.3d 829 (6th Cir. 2020) ..........................................................................................12

*Zepeda Rivas v. Jennings*,
445 F. Supp. 3d 36 (N.D. Cal. 2020) ...............................................................................7

*Zimmerman v. Bell*,
800 F.2d 386 (4th Cir. 1986) ..........................................................................................17

**Statutes**

28 U.S.C. § 2241 .................................................................................................................2

**Other Authorities**

Elizabeth M. Viglianti *et al.*, *Medical Problems of State and Federal Prisoners
and Jail Inmates, 2011-12*, U.S. Dept. of Justice, 3 (2014) ...........................................5

Fourteenth Amendment ........................................................................................................13

Fed. R. Civ. P. 13(a)-(b) .......................................................................................................7

Fed. R. Civ. P. 13(c)(5) .........................................................................................................7

Fed. R. Civ. P. 23(a)(1) .........................................................................................................9

Fed. R. Civ. P. 23(a)(4) ........................................................................................................16

Fed. R. Civ. P. 23(g)(1) ........................................................................................................18

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) .......................................................................................19

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................................18

Federal Rule of Civil Procedure 23(b)(2) .................................................................. *passim*

Federal Rules of Civil Procedure Rule 23 ....................................................................4, 7, 11

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84
N.Y.U. L. Rev. 97, 132 (2009) ......................................................................................11

Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class
Action*, 103 Colum. L.Rev. 149, 176, n. 110 (2003) .................................................. 12-13

Rule 23(a).................................................................................................................. *passim*

Rule 23(a)(2) ........................................................................................................10, 11, 12

Rule 23(a)(3) ...................................................................................................................14

Rule 23(a)(4)'s ................................................................................................................17

Rule 23(a) and Rule 23(b)..................................................................................................7

Rule 23(b) ..........................................................................................................................7

Rule 23(c)(5) ......................................................................................................................7

Rule 23(g) ........................................................................................................................18

Plaintiffs, on behalf of themselves and the classes they seek to represent, hereby respectfully request that this Court grant their motion for class certification, appoint them as named plaintiffs in this litigation, and appoint their undersigned attorneys as class counsel.

## INTRODUCTION

The spread of COVID-19 has created an unprecedented health crisis. Public health officials throughout the country have implored the general public to take protective measures to curb the virus's spread. But the people in Defendants' care and custody cannot protect themselves; only Defendants can ensure that they have the basic means to protect themselves, including masks, hygiene products, healthcare services (including vaccination), cleaning materials, and a means to distance themselves from people who may be infected.

Defendants Wilson and Green, in their official capacities in operating and overseeing the Chesapeake Detention Facility ("CDF"), have failed to take reasonable measures to protect from COVID-19 infection the residents of CDF in their custody and under their control. There is already an outbreak of COVID-19 at CDF, with one-third of residents and staff testing positive in a month's time. Moreover, CDF's inadequate care for those with symptoms or confirmed cases increases the likelihood that those infected will suffer serious illness, permanent physical damage, and death. Every single person at CDF faces a risk of death or serious harm as a result.

## CLASS DEFINITION

This federal class action seeks to require Defendants to implement procedures that keep Plaintiffs reasonably safe from contracting communicable disease while in custody and provide reasonable medical care for those who do contract the virus. Moreover, due to age or pre-existing medical conditions, some people are so vulnerable to COVID-19 that no adequate policies and

procedures could be implemented quickly enough to protect them. These people, as a subclass (the "Medically Vulnerable Subclass"), seek a writ of habeas corpus under 28 U.S.C. § 2241.

Plaintiffs, therefore, seek to certify two classes with one subclass, as follows:

- The Pretrial Class is defined as "all people detained in the Chesapeake Detention Facility who are not detained pursuant to a judgment of conviction."[1]

  o The Medically Vulnerable Subclass is defined as "all Pretrial Class members whose medical condition renders them especially vulnerable to the coronavirus as determined by guidelines promulgated by the Centers for Disease Control and Prevention."[2, 3]

- The Post-Conviction Class is defined as "all people detained in the Chesapeake Detention Facility who *are* detained pursuant to a judgment of conviction."[4]

Named Plaintiffs Sedric Catchings, Charles Couser, Collin Davis, Allen Lamin, Sirron Little, Taiwo Moultrie, and Joseph Speed represent the Pretrial Class.[5] ECF No. 1 ¶¶ 28-33.[6] Named Plaintiffs Sedric Catchings, Collin Davis, Sirron Little, Taiwo Moultrie, and Joseph Speed represent the Medically Vulnerable Subclass. *Id.* ¶¶ 28, 30, 32-34. Named Plaintiff Howard Thomas represents the Post-Conviction Class. *Id.* ¶ 35.[7]

---

[1]     This definition is intended to include individuals who *will be detained* in the future as well.
[2]     *See, e.g.*, U.S. Centers for Disease Control and Prevention, *People Who Are At Higher Risk and Other People Who Need to Take Extra Precautions* (last reviewed Feb. 21, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.
[3]     *See supra* n.1.
[4]     *See supra* n.1.
[5]     For ease of reference, exhibits filed with the complaint are hereinafter referred to by ECF number.
[6]     For ease of reference, exhibits filed with the Complaint are hereinafter referred to by ECF number. A complete list of exhibits has been filed together with this brief in accordance with LR 105(5).
[7]     Named Plaintiff Joseph Speed is detained pending sentencing. ECF No. 1 ¶ 34. When sentenced, he will move into the proposed Post-Conviction Class.

## BACKGROUND

Plaintiffs' suit for declaratory and injunctive relief under the Eighth and Fifth / Fourteenth Amendments, as well as the Medically Vulnerable Subclass's petition for habeas corpus, arise from Defendants' failure to protect them from the severe risk of death or serious physical harm and their deliberate indifference to those threats to their health and safety.

The facts of this case are described at length in Plaintiffs' Complaint and briefing in support of the Motion for Temporary Restraining Order and Preliminary Injunction. Simply put, there is an uncontrolled COVID-19[8] outbreak at CDF, where, according to Defendants' own statistics, *one-third of current residents* and *approximately one-third of staff members* have tested positive for COVID-19 in the last month.[9] The issues being faced by the proposed Classes and Subclass are unacceptable. CDF does not sanitize cells when moving a COVID-positive resident out. CDF does not ensure that COVID-positive residents are moved prior to other residents entering a unit. CDF violates U.S. Centers for Disease Control and Prevention ("CDC") guideline after guideline. Cleaning materials are in short supply; residents cannot meaningfully sanitize masks; CDF does not enforce social distancing or masking; some residents do not even have running water in their cells.[10]

Named Plaintiffs and putative class members are already in danger. During this most recent outbreak in January and February, two of the Named Plaintiffs have contracted COVID for the *second time*. Many Plaintiffs have preexisting conditions that make them especially

---

[8]     Severe acute respiratory syndrome coronavirus 2, or SARS-CoV-2, commonly called the "novel coronavirus" or "coronavirus," is the highly contagious and transmissible virus underlying this cause of action and the events described in the Complaint. The virus frequently results in a disease, COVID-19. Plaintiffs refer to both the virus and disease as "COVID" or "COVID-19."

[9]     ECF No. 1-27 (Expert Declaration of Dr. Jaimie Meyer (February 18, 2021) ("Meyer Decl.") ¶ 26 (relying on publicly reported statistics from CDF)); *COVID-19 Case Count*, Maryland Department of Public Safety and Corrections Services, https://news.maryland.gov/dpscs/covid-19/ (last visited on Feb. 15, 2021) (showing 169 positive residents, out of approximately 400, and 80 positive staff, out of approximately 220).

[10]    ECF Nos. 1-2 through 1-15 (Resident Declarations).

vulnerable to severe illness and death.[11] CDF has shown an inability to protect against the spread

of COVID and inability to properly treat COVID-positive residents and an intentional difference

to their health and safety. Named Plaintiffs—along with approximately 400 other prisoners—are

trapped in a detention facility that endangers the sick. Absent this Court's intervention to protect

the Classes and Subclass, many will suffer; some will die.

## SUMMARY OF ARGUMENT

The claims of the Classes and Subclass are suited to proceed as a class action under

Federal Rule of Civil Procedure 23(b)(2).[12] In the Fourth Circuit, the procedure and analysis for

certifying class action habeas petitions is the same as any other class action. *See Diaz v. Hott*,

297 F. Supp. 3d 618, 628 (E.D. Va. 2018) (certifying class action habeas petition), *aff'd sub nom.*

*Guzman Chavez v. Hott*, 940 F.3d 867 (4th Cir. 2019).[13] Thus, to certify a class, each of the

requirements of Rule 23 must be met.

Plaintiffs here satisfy Rule 23 because: (a) every member of the Classes and Subclass

have the same legal theory as to why their federal rights are being violated; (b) CDF's failure to

---

[11]      ECF Nos. 1-2 through 1-15 (Resident Declarations).

[12]Although the Supreme Court has not squarely decided whether Rule 23 of the Federal Rules of Civil Procedure "is applicable to petitions for habeas corpus relief," on several occasions the Court has decided class action habeas petitions. *Schall v. Martin*, 467 U.S. 253, 261 n.10 (1984) (declining to address the issue and accepting district court's certification of the class; reversing lower courts' holding that preventive detention of juveniles was unconstitutional); *but see Middendorf v. Henry*, 425 U.S. 25, 30 (1976) (declining to decide whether class action habeas petitions are cognizable; refusing to grant relief).

[13] Some other circuits have adopted "a representative procedure analogous to the class action provided for in Rule 23." *Bijeol v. Benson*, 513 F.2d 965, 968 (7th Cir. 1975) (holding that such a procedure "may be appropriate in a habeas corpus action under some circumstances."). The Fourth Circuit, in keeping with the practices of the Second, Eighth, and Ninth Circuits, simply applies the procedure of Rule 23. *See also Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) ("the Ninth Circuit has recognized that class actions may be brought pursuant to habeas corpus.") (citing *Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir.1987)); *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973) ("[U]nder certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts in considering multiple petitions, holding multiple hearings, and writing multiple opinions."); *Inmates of Attica Corr. Facility v. Rockefeller*, 453 F.2d 12, 24 (2d Cir. 1971) (finding a class action habeas "properly maintainable" when the Rule 23 factors are met); *Adderly v. Wainwright*, 58 F.R.D. 389, 400 (M.D. Fla. 1972) (holding that a petition for a writ of habeas corpus can be brought as a class action). *See also* discussion *infra* at pp. 6-7 (listing federal courts that have granted class-wide relief in habeas cases related to COVID).

take reasonable measures to protect them violates the rights of every Class and Subclass member; (c) every Class and Subclass member will use similar or overlapping evidence in support of his or her cause of action; and (d) every Class and Subclass member seeks a uniform injunction or writ of habeas corpus requiring Defendants to take immediate action to protect them from a grave risk of death or harm. In other words, each representative shares all legal claims with the Class or Subclass the representative seeks to represent, each Class or Subclass's evidence will be identical in support of those claims, and the representatives seek the same relief as the Class or Subclass they seek to represent.

In addition to commonality, the Classes and Subclass satisfy the other requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2). Joinder is impracticable because the number of people in the CDF's custody exceeds hundreds of people on any given day, and the Subclass also likely contains tens, if not hundreds, of people.[14] The claims of the named Plaintiffs are typical of those of the class as a whole. That typicality stems from their claim that CDF has placed them at significant risk of harm by failing to take appropriate steps to address the risk of COVID-19. Named Plaintiffs have no conflicts with the unnamed members of the proposed classes. Their lawyers are experienced in federal-court civil-rights class actions, particularly those involving prisons and jails. Thus, named Plaintiffs and their counsel will adequately represent the interests of the proposed Classes and Subclass. Finally, Defendants have refused to act to address the COVID-19 health crisis at CDF in a manner that applies generally to

---

[14]     *See* ECF No. 1 ¶ 212 ("A sizeable percentage of the jail population is likely medically vulnerable to COVID."). According to one study, "asthma prevalence is 30%-60% higher among individuals with a history of incarceration as compared with the general population." Elizabeth M. Viglianti *et al.*, *Mass Incarceration and Pulmonary Health: Guidance for Clinicians*, 15 Ann. Am. Thoracic Soc. 409, 410 (2018). Another study estimates that up to 15% of people who are in custody have asthma, 10% of people in custody live with a heart condition that requires medical care, 10% live with diabetes, and 30% have hypertension. *See* Laura Maruschak, *et al.*, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dept. of Justice, 3 (2014). *See also infra* (detailing same information)

the class as a whole, rendering class-wide injunctive relief appropriate under Federal Rule of Civil Procedure 23(b)(2), and a class-wide writ of habeas corpus appropriate under *Diaz v. Hott*.

Federal courts around the country, including this Court, have granted class relief in similar or identical circumstances. *See*, *e.g.*, *Coreas v. Bounds*, 458 F. Supp. 3d 352, 362 (D. Md. 2020) (granting federal habeas relief to class of federal immigration detainees at Maryland state facility); *Coreas v. Bounds*, No. 20-CV-0780, 2020 WL 5593338, at *7 (D. Md. Sept. 18, 2020) (granting certification of class and subclasses, noting that "numerous federal courts across the nation have certified, provisionally or otherwise, class actions brought by immigration detainees through habeas petitions during the ongoing COVID-19 pandemic") (collecting cases); *Banks v. Booth*, 468 F. Supp. 3d 101, 125-26 (D.D.C. 2020) (granting in part preliminary injunction with class-wide relief, including ordering compliance with certain CDC guidelines, after granting a TRO), *reconsideration denied sub nom. Banks*, No. CV 20-849(CKK), 2021 WL 260112 (D.D.C. Jan. 26, 2021) (appeal pending); *Criswell v. Boudreaux*, No. 20-CV-01048-DAD-SAB, 2020 WL 5235675, at *26 (E.D. Cal. Sept. 2, 2020) (granting motion for provisional class certification and injunctive relief in part); *Carranza v. Reams*, __ F. Supp. 3d __, 2020 WL 2320174, at *15 (D. Colo. May 11, 2020) (granting class-wide relief prior to resolving motion for class certification); *Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec.*, No. 20-CV-453-LM, 2020 WL 2113642, at *2-4 (provisionally certifying class of immigration detainees for purpose of granting habeas relief) (D.N.H. May 4, 2020). *See also Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709, 750 (C.D. Cal. 2020) (granting class certification and preliminary injunction for immigration detainees); *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 451 (D. Conn. 2020) (granting multi-party habeas relief to federal post-conviction prisoners at Danbury Federal Correctional Institution ("FCI Danbury")); *Savino v. Souza*, 453 F. Supp. 3d

441, 454 (D. Mass. 2020) (certifying class and granting habeas relief for immigration detainees); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38-42 (N.D. Cal. 2020) (granting provisional class certification and temporary restraining order for immigration detainees).

## ARGUMENT

For a district court to certify a class action, the proposed class must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and at least one requirement of Rule 23(b). Fed. R. Civ. P. 13(a)-(b); *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). Because the proposed Classes and Subclass meet all four Rule 23(a) requirements and the requirements of Rule 23(b)(2), this Court should certify Plaintiffs' proposed Classes. Rule 23(c)(5) further allows for a class to be divided into subclasses, where the subclasses are treated as a class under Rule 23. Fed. R. Civ. P. 13(c)(5). As demonstrated below, each subclass additionally meets all requirements of Rule 23(a) and Rule 23(b) and this Court should similarly certify Plaintiffs' proposed subclass.

Class certification is particularly favored when, as here, the named plaintiffs assert civil rights claims that are transitory in nature, such that mootness concerns would make it difficult or impossible for individuals to litigate the issues outside of the class context. *See Gratz v. Bollinger*, 539 U.S. 244, 268 (2003) (noting that class-action treatment was "particularly important" in a case where the claims of the individual plaintiffs ran "the risk of becoming moot" because "[t]he class action vehicle . . . provides a mechanism for ensuring that a justiciable claim is before the Court") (quotation marks and citation omitted)). Indeed, class-action treatment is favorable here given the varying, but, for many, relatively brief period of detention in facilities

that primarily house individuals who are pretrial in their criminal cases.[15] *See*, *e.g.*, *Hiatt v. Cty. of Adams, Ohio*, 155 F.R.D. 605, 608-09 (S.D. Ohio 1994) (explaining that given the "short term nature of incarceration in a county jail," a class should be certified when it is the "only vehicle whereby the legality of [a jail's] operation . . . can be reviewed").

Indeed, on February 19, 2021, in declining to address some of the alleged constitutional violations outlined in this lawsuit, this Court held that arguments about the conditions of CDF were more properly raised in a class-action civil-rights or habeas suit instead of a bond-review motion, for many of the reasons described in this memorandum:

> Many of the arguments [about CDF's conditions] raised by Defendant . . . assert potential constitutional violations relating more broadly to conditions of confinement that presumably are common to all detainees at CDF . . . . [S]uch arguments are better suited to a civil rights lawsuit or perhaps a habeas petition rather than a detention hearing for several reasons. Most fundamentally, the presence of such violations would prompt the Court to consider class-wide remedies short of release . . . , yet the parties who could potentially provide such remedies—the officials who run the facilities—are not before the Court. . . .
>
> In sum, remedying facility-wide constitutional grievances common to many detainees as alleged cannot be optimally addressed in the context of a . . . detention hearing.

Memorandum and Order, *United States v. Goforth*, Case No. 1:20-cr-00319-CCB-1 (D. Md. Feb. 19, 2021), ECF No. 33.

---

[15]    The relative brevity of some individual class members' detention supports class certification but is irrelevant to the ongoing danger and irreparable injury Defendants' conduct is causing Plaintiffs and the class. Class members can be exposed to and contract COVID even after brief exposure to the appalling conditions at CDF. *See generally* ECF No. 1 (Compl.).

I.    **Plaintiffs Satisfy Rule 23(a): They Are Numerous and Raise Common Questions, and the Named Plaintiffs Are Adequate Representatives with Typical Claims**

      A.   **Numerosity is Satisfied: The Class and Subclasses Each Include Hundreds of Members.**

First, the proposed Classes and Subclass are sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). In determining whether the numerosity requirement is met, "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (citation and quotation omitted). In fact, 18 people can be sufficient. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n.*, 375 F.2d 648, 653 (4th Cir. 1967); *see also Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 535 (E.D.N.C. 1995) ("[A] class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable.") (citation omitted).

Numerosity is easily satisfied here. Nearly 400 residents are detained at CDF. The vast majority are presumptively innocent and held pretrial; the remainder are convicted individuals. The threat posed by COVID-19 is such that every person in CDF's custody faces the risk of significant harm. Everyone is at risk of infection. And everyone who is infected is at risk of receiving inadequate medical care that increases the risk of serious illness, long-term permanent physical damage, and death. COVID-19 is therefore potentially lethal for any person in the jail.

The proposed Subclass also meets the numerosity threshold. The Medically Vulnerable Subclass is comprised of people who are particularly vulnerable to COVID because of underlying medical conditions or age. The CDC has promulgated guidance on the individuals who are most likely to become severely ill, meaning that they require hospitalization, intensive care, use of a ventilator to help them breathe, and/or heightened risk of death. This higher-risk

group includes adults over the age of 65 and people with underlying medical conditions (i.e., "medically vulnerable" individuals), including lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, compromised immune systems (such as from cancer, HIV, or autoimmune disease), severe obesity, and asthma. All such people are at elevated risk higher risk for developing more serious complications from COVID-19 illness.[16]

A sizeable percentage of the jail population is likely medically vulnerable to COVID-19. According to one study, "[a]sthma prevalence is 30%-60% higher among individuals with a history of incarceration as compared with the general population."[17] Another study estimates that up to 15% of people who are in custody have asthma, 10% of people in custody live with a heart condition that requires medical care, 10% live with diabetes, and 30% have hypertension.[18] Based on these estimates and assuming some overlap in these diagnoses, a fair estimate of the number of people who live with one or more of these medical vulnerabilities exceeds several hundred people.

The classes and subclass are too numerous for joinder to be considered practicable.

**B. Commonality is Satisfied: The Legality of Defendant's Response to the Pandemic Involves Numerous Common Questions of Fact and Law.**

Rule 23(a)(2) requires that "there [be] questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that class members' claims "depend upon a common contention" of facts *or* law, such that "determination of its truth or falsity will resolve an issue

---

[16] *See* ECF No. 1-29 (Declaration of Dr. Franco-Paredes) ("Franco-Paredes Decl.") ¶¶ 9-10.

[17] Viglianti *et al.*, *supra* n. 12 at 410.

[18] Maruschack, *et al.*, *supra* n. 12 at 3..

that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

In other words, the commonality requirement of Rule 23(a)(2) "does not require that all, or even most issues be common, nor that common issues predominate, but only that common issues exist." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) (citation omitted), *aff'd*, 6 F.3d 177 (4th Cir. 1993); *see also Wal-Mart*, 564 U.S. at 369 ("[E]ven a single [common] question will do.") (citation omitted). For this reason, factual differences among the claims of putative class members do not defeat certification. Indeed, "Rule 23 does not require precise, mirror-image identity respecting the injuries caused by a single practice or policy at a single facility." *Int'l Woodworkers of Am. AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981).

Rather, commonality requires Plaintiffs to demonstrate that there is "some glue" holding the claims together; that a common question or questions "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 352, 349-50 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)) (emphasis in original). These "common answer[s]" must "relate[] to the actual theory of liability in the case." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). Civil rights cases often easily demonstrate commonality because the defendant's actions are "central to the claims of all class members[,] irrespective of their individual circumstances and the disparate effects of the conduct." *Baby Neal ex. rel. Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) (citing 7A Charles A. Wright, *et al*., Fed. Prac. & Proc. § 1763 at 219 (1986)).

Accordingly, courts in the Fourth Circuit have certified class actions in such cases where a class of people in pretrial detention sought to challenge the state's practice of transferring

pretrial detainees from local jails to state institutions, *see Epps v. Levine*, 457 F. Supp. 561, 563 (D. Md. 1978); where a class of people unable to afford the traffic offense-related fines and court costs sought to challenge the state's practice of revoking their driver's licenses as a consequence of their inability to pay, *see Johnson v. Jessup*, 381 F. Supp. 3d 619, 637 (M.D.N.C. 2019); and in a recent case where a class of immigration detainees sought to challenge the conditions in immigration detention, *see Coreas*, 2020 WL 5593338, at *7 (D. Md. Sept. 18, 2020) (granting certification of class and subclasses in immigration-detention challenge, noting that "numerous federal courts across the nation have certified, provisionally or otherwise, class actions brought by immigration detainees through habeas petitions during the ongoing COVID-19 pandemic" (citing cases)). *See also*, *e.g.*, *Wilson v. Williams*, 961 F.3d 829, 832 (6th Cir. 2020) (class-action habeas lawsuit regarding conditions of confinement during COVID-19); *Whitted v. Easter*, No. 20-CV-00569-MPS, 2020 WL 4605224, at *3 (D. Conn. Aug. 11, 2020) (certifying class of residents of FCI Danbury in challenge to conditions). Additionally, many district courts have found that systemic constitutional challenges to prison and jail conditions provide the "glue" necessary to hold a class together.[19]

As the Supreme Court explained in *Wal-Mart*, "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do." 564 U.S. at 359 (quoting Richard A. Nagareda, *The*

---

[19] *See*, *e.g.*, *Olson v. Brown*, 284 F.R.D. 398, 410-11 (N.D. Ind. 2012 (jail policies and conditions); *Ross v. Gossett*, 2020 WL 1472072, at *3-4 (S.D. Ill. Mar. 26, 2020) (unconstitutional practices regarding shakedowns); *Rosas v. Baca*, 2012 WL 2061694, at *3 (C.D. Cal. June 7, 2012 (jail violence case); *Jones v. Guzman*, 296 F.R.D. 416, 465-66 (E.D. La. 2013) (jail violence case); *Hughes v. Judd*, 2013 WL 1821077, at *23 (M.D. Fla. Mar. 27, 2013) (unconstitutional conditions for juvenile detainees); *M.D. v. Perry*, 294 F.R.D. 7, 24-25 (S.D. Tex. 2013) (foster children facing abuse); *Parsons v. Ryan*, 289 F.R.D. 513, 515-16 (D. Ariz. 2013) (inadequate medical and mental health care in state prisons); *Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 96-97 (E.D.N.Y. 2013) (jail sanitation case); *Abadia-Peixoto v. United States Dep't of Homeland Sec.*, 277 F.R.D. 572, 576 (N.D. Cal. 2011) (shackling of detainees during judicial proceedings).

*Preexistence Principle and the Structure of the Class Action*, 103 Colum. L.Rev. 149, 176, n. 110 (2003)). Here, Plaintiffs allege that all members of the proposed Class are at significant risk of contracting a fatal illness due to CDF's systemic failure to implement policies and practices necessary to protect them. The core questions of law and fact common to the classes and subclass include the following:

    a.  Do CDF's conditions create a substantial risk that the people in its custody will be infected with COVID-19?

    b.  Do CDF's conditions create a substantial risk that the people in its custody who are infected with COVID-19 will face serious illness, long-term physical damage, or death?

    c.  Did Defendants know, or should Defendants have known, of these risks?

    d.  Are Defendants acting with deliberate indifference to these risks?

    e.  *For the subclass:* Is the risk of harm posed by CDF's conditions so severe and so immediate that the only adequate remedy is release?

Resolving these questions will yield exactly the kind of "common answers" to Plaintiffs' Eighth and Fifth / Fourteenth Amendment claims that the Supreme Court requires.[20] *See Wal-Mart*, 564 U.S. at 351.

    An injunctive challenge to a systemic failure to protect class members from significant harm is a textbook example of a case that satisfies the commonality requirement and warrants class certification. Indeed, "this is precisely the type of case for which class certification pursuant

---

[20]    To answer these core questions, the Court will need to consider specific fact questions common to the classes, including: what measures Defendants are taking in response to the spread of COVID-19; whether conditions at CDF comply with CDC guidelines; whether Defendant Wilson knew of and disregarded the risk of COVID-19. Ultimately, the Court will determine the legal question of whether Defendants' conduct rises to the requisite level of deliberate indifference for a constitutional violation. The answers to these questions will be common to all members of the putative classes at issue.

13

to Rule 23(b)(2) was intended." *Scott v. Clarke*, 61 F. Supp. 3d 569, 590-91 (W.D. Va. 2014); *see Thorn v. Jefferson–Pilot Life Ins. Co.,* 445 F.3d 311, 330 (4th Cir. 2006). Plaintiffs here challenge Defendant's systemic failure to respond reasonably to the deadly threat of COVID-19. The commonality requirement is therefore easily met. *See Scott*, 61 F. Supp. 3d at 590 (W.D. Va. 2014) (certifying a 23(b)(2) class where "Plaintiffs' amended pleadings allege that the Defendants have provided deficient medical care, or failed to provide medical care under circumstances in which it is plainly warranted and needed, on a systemic basis that jeopardizes the continuing health and well-being of Plaintiffs and all other prisoners residing or who will reside at [the prison]").

### C. Typicality is Satisfied: The Named Plaintiffs' Claims Are Representative of Those of the Classes and Subclass at Large.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The threshold requirements of . . . typicality are not high." *Brown v. Nucor Corp*., 576 F.3d 149, 153 (4th Cir. 2009) (quoting *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993)). Class representatives must "be part of the class and possess the same interest and suffer the same injury as the class members." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (quoting *Gen. Tel. Co. of Southwest. v. Falcon*, 457 U.S. 147, 156 (1982)).

Under the typicality requirement, the Court does not require "members of the class [to] have identical factual and legal claims in all respects." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998). In this respect, "factual differences will not render a claim atypical," so long as the class representative's claim "arises from the same event or practice or course of conduct that gives rise to the claims of the class members" and is "based on the same legal theory." *Casey*, 43 F.3d at 58 (citations omitted). In other words, "[t]he

14

essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Dieter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citations omitted).

In this case, the claims of the Plaintiffs are typical of the Classes and Subclass that they represent. Every member of the class faces a substantial risk of contracting COVID-19 if immediate measures are not implemented. Some people, like the medically vulnerable plaintiffs, are at imminent risk of death or severe harm if they are not transferred to a safer environment. The overarching nature of the threat of COVID-19 to every person confined in CDF is sufficient to satisfy typicality for the two Classes. For the Medically Vulnerable Subclass, each person claims that the person must be released because his health is at imminent and immediate risk from the same virus and same policy failures as each other person in the subclass. The claims of the representatives are therefore typical of the claims of those they seek to represent.

### D.  The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes and Subclass.

Finally, the Named Plaintiffs also meet the final requirement under Rule 23(a): they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequate representation requirement is met where: "1) plaintiff's interests are [not] antagonistic to the interest of other members of the class[,] and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Longo v. Trojan Horse Ltd.*, 208 F. Supp.3d 700, 711 (E.D.N.C. 2016) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)); *see also Olvera-Morales v. Int'l Labor Mgmt. Corp. Inc*, 246 F.R.D. 250, 258 (M.D.N.C. 2007) ("To establish adequacy, 'the representative must have common interests with unnamed members of the class' and 'it must appear that the representatives will vigorously

pisit

prosecute the interests of the class through qualified counsel.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

In this case, the Named Plaintiffs do not have interests that conflict with those of the rest of the class. To the contrary, as laid out above in the commonality and typicality discussions, the Named Plaintiffs here pursue claims common to the Classes and Subclass as a whole in an effort to advance a common interest in ensuring they receive adequate protection from COVID-19. The injunctive relief they seek would benefit the entire class equally. The Named Plaintiffs and their fellow Class and Subclass members thus share a common interest and are not conflict with each other.

The Named Plaintiffs also meet the requirement that they will "vigorously prosecute the interests of the class through qualified counsel." *Olvera-Morales*, 246 F.R.D at 258. They are represented here by highly qualified and experienced civil rights attorneys who are able and willing to conduct this litigation on behalf of the class. Plaintiffs' counsel from the Lawyers' Committee for Civil Rights Under Law have extensive experience litigating complex class action cases and civil rights cases, including cases concerning unconstitutional pretrial systems. Ex. 1 hereto, Declaration of Jon Greenbaum in Support of Plaintiffs' Motion for Class Certification ("Greenbaum Decl.") ¶¶ 4-9. Further, pro bono counsel from the law firm Bryan Cave Leighton Paisner LLP have extensive experience litigating complex class action cases. *Id.* ¶ 10. As discussed in further detail below, *infra* Part III, Plaintiffs' counsel are qualified and experienced counsel with a history of zealous advocacy on behalf of their clients. Thus, Rule 23(a)(4)'s adequacy requirement is met.

## II.    Certification of the Classes and Subclass for Prospective Relief is Appropriate Under Fed. R. Civ. P. 23(b)(2)

In addition to satisfying Rule 23(a), the proposed class in this case satisfies Rule 23(b)(2). A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Zimmerman v. Bell*, 800 F.2d 386, 389-90 (4th Cir. 1986) ("[S]ubsection (b)(2) [is] limited to claims where the relief sought [is] primarily injunctive or declaratory."); *Bumgarner v. NCDOC*, 276 F.R.D. 452, 457-58 (E.D.N.C. 2011) ("The essential consideration is whether the complaint alleges that the plaintiffs have been injured by defendants' conduct which is based on policies and practices applicable to the entire class.") (citation omitted).

Courts have repeatedly held that civil-rights class actions are the paradigmatic Rule 23(b)(2) suits, "for they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2d Cir. 1979), *vacated on other grounds*, *Lombard v. Marcera*, 442 U.S. 915 (1979). As stated in the leading treatise on class actions:

> Rule 23(b)(2) was drafted specifically to facilitate relief in civil rights suits. Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria.

A. Conte & H. Newberg, Newberg on Class Actions § 25.20 (4th ed. 2002).

Injunctive challenges to prison and jail conditions routinely proceed as class actions. *See*, *e.g.*, *Brown v. Plata*, 563 U.S. 493, 506-08 (2011); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 374 (1992); *Jones 'El v. Berge*, 374 F.3d 541, 543 (7th Cir. 2004); *Jones v. Diamond*, 519 F.2d 1090, 1097 (5th Cir. 1975) ("Realistically, class actions are the only practicable judicial mechanism for the cleansing reformation and purification of these penal institutions."); *Casey*,

43 F.3d at 58 (noting that subsection (b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief"); *Scott v. Clarke*, 61 F. Supp. at 591; *Bradley v. Harrelson*, 151 F.R.D. 422, 427 (M.D. Ala. 1993) (stating that subsection (b)(2) "is particularly applicable to suits such as the one *sub judice* which involve conditions of confinement in a correctional institution"). Here, high-level officials failing to take reasonable measures to abate the deadly threat posed by COVID-19 places all class members at risk of serious illness or death. Rule 23(b)(2) is satisfied.

### III.   Undersigned Counsel Should Be Appointed Class Counsel Under Rule 23(g).

Federal Rule of Civil Procedure 23(g) requires that the court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1). Class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In determining whether this requirement is met, courts must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

Undersigned Counsel satisfy these four requirements. The Plaintiffs and proposed Classes are represented by attorneys from the Lawyers' Committee for Civil Rights Under Law as well as pro bono counsel from the large international law firm of Bryan Cave Leighton Paisner LLP. Counsel has extensive experience litigating complex civil rights matters and class action lawsuits in federal court and extensive knowledge of both the conditions in the jail and the relevant constitutional law. Class counsel have conducted an extensive investigation into the conditions in CDF and the sanitation and social distancing requirements that are necessary to prevent or mitigate an outbreak of COVID-19. In addition, Class counsel have sufficient

financial and human resources to litigate this matter. In sum, Plaintiffs' attorneys are experienced advocates; possess sufficient "vigor" along with sufficient resources, to adequately represent the Classes and Subclass and to prosecute this action; and are appropriate counsel for the matter. *See Kirkpatrick J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (citations omitted).

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Classes and Subclass as defined in this Motion and appoint the undersigned as class counsel.

Dated: February 22, 2021                     Respectfully submitted,

(Signatures follow on next page.)

*/s/ Alec W. Farr*
Alec W. Farr (Federal Bar No. 12513)
awfarr@bclplaw.com
Daniel C. Schwartz
(*pro hac vice* to be submitted)
dcschwartz@bclplaw.com
Adam L. Shaw
(*pro hac vice* to be submitted)
adam.shaw@bclplaw.com
Joscelyn T. Solomon
(Federal Bar No. 21555)
joscelyn.solomon@bclplaw.com
Brett R. Orren
(*pro hac vice* to be submitted)
brett.orren@bclplaw.com

BRYAN CAVE LEIGHTON PAISNER LLP
1155 F Street, NW
Washington, DC 20004
(202) 508-6000 Phone
(202) 508-6200 Facsimile

*/s/ Tianna Mays*
Tianna Mays (Bar No. 21597)
tmays@lawyerscommittee.org
Jon Greenbaum
(*pro hac vice* admission pending)
jgreenbaum@lawyerscommittee.org
Arthur Ago
(*pro hac vice* admission pending)
aago@lawyerscommittee.org
John Fowler
(*pro hac vice* admission pending)
jfowler@lawyerscommittee.org
Rochelle F. Swartz
(*pro hac vice* admission pending)
rswartz@lawyerscommittee.org

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW Suite 900
Washington, DC 20005
Phone 202-662-8600
Fax 202-783-0857
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Adam L. Shaw, an attorney, hereby certify that on February 22, 2021, the foregoing was filed using the Court's CM/ECF system. I further certify that I, or another one of Plaintiffs' attorneys, will promptly serve a copy of the same on the Attorney General of the State of Maryland via email at the address below.

> Brian E. Frosh
> Maryland Attorney General
> 200 St. Paul Place
> Baltimore, MD 21202
> civil_service@oag.state.md.us

*/s/ Adam L. Shaw*
Adam L. Shaw

21