IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| SEDRIC CATCHINGS *et al.*, <br> Plaintiffs, | * | |
| | * | |
| v. | | Case No.: 1:21-cv-00428-TSE |
| | * | |
| CALVIN WILSON *et al.*, <br> Defendants. | * | |

### AGREEMENT BETWEEN THE PLAINTIFFS AND DEFENDANTS

The parties agree as follows. By agreeing to the conditions herein, Defendants do not concede or admit to the failure to perform any specified action prior to the date of this agreement. Defendants state that much of this agreement is duplicative of prior policies or practices; Plaintiffs state that prior practices or policies did not align with this agreement.

I. **PRACTICES AT THE CHESAPEAKE DETENTION FACILITY AND THE JAIL INDUSTRIES BUILDING ("THE FACILITIES")**

Defendants shall abide by the following conditions.

**Testing, new admissions, and population size:**

1. Defendants (which includes both Defendants and their agents for purposes of this agreement) shall test all residents and staff on a weekly basis.
2. Defendants shall test all new residents upon admission.

**Treatment of "high risk" residents:**

3. Defendants shall identify "high risk" residents upon admission to the facility.
    a. "High risk" residents are defined as residents with certain medical conditions and older residents.
        i. Residents with certain medical conditions are those individuals identified by the Centers for Disease Control and Prevention who are, or might be, at increased risk of severe illness from COVID-19, lists of which are available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
        ii. Older residents are residents over the age of 65, whom Maryland has classified as being eligible for vaccines in Phase 1C, *see* https://covidlink.maryland.gov/content/vaccine/.
    b. "High risk" residents shall include residents on the "chronic care list," which is defined by Defendants' medical provider.

    c. Medical staff shall ensure that these residents on the "chronic care" list are treated differently when these residents are moved into or out of quarantine or isolation.
4. "High risk" residents shall be prioritized for housing in single occupancy cells, whether they are on general population, quarantine, or isolation.

**Vaccinations:**

5. Defendants shall offer vaccines immediately or when available, along with education about the vaccine, to any current or future resident eligible under Maryland's guidelines, which currently make "high risk" residents of detention facilities eligible (but do not explain the definition of "high risk"). Under current guidelines, Defendants shall prioritize "high risk" residents as defined *supra* at paragraph 3.
6. Defendants shall offer vaccines immediately or when available, along with education about the vaccine, to all *current* residents eligible under Maryland's guidelines. Defendants shall make reasonable efforts to secure supplies.
7. Defendants shall offer vaccination to all *newly admitted* residents under Maryland guidelines at admission immediately or as soon as supplies are available. Defendants shall make reasonable efforts to secure supplies.
8. Defendants shall offer vaccination to any residents *who become eligible* under Maryland guidelines immediately upon their becoming eligible or as soon as supplies are available. Defendants shall make reasonable efforts to secure supplies.
9. Defendants shall offer vaccination to all staff members, along with education about the vaccine immediately or as soon as supplies are available. Defendants shall make reasonable efforts to secure supplies.

**Cohorting - isolation and quarantine:**

10. Defendants shall house the following cohorts in housing units separate from one another:
    a. Quarantine for newly admitted residents,
    b. Quarantine for "close contacts" of COVID-positive individuals,
    c. Isolation for confirmed positive residents, and
    d. General population.
11. Defendants shall prioritize placing "high risk" residents in quarantine in single-occupancy cells above all single-occupancy priorities in this document. Defendants shall house all "high risk" residents in quarantine in a cohort separate from other, non-high risk residents in quarantine.
12. All other residents in quarantine shall be prioritized for housing in single-occupancy cells.
13. When Defendants remove a resident from a housing unit for placement in isolation or quarantine, Defendants shall wait a specified period of time, then sanitize the cell of the removed resident after waiting that period of time, per the guidelines of the American Correctional Association and the CDC guidelines (detailed in paragraph 25, *infra*).
    a. Defendants shall not move a resident into the cell of the removed resident prior to the passage of at least four hours and sanitization of the cell in full compliance with CDC guidelines. Sanitization shall happen after the passage of four hours.

    b. Defendants shall sanitize, in full compliance with CDC guidelines, all common areas in the housing unit of the removed resident prior to residents using common areas.
    c. Defendants shall maintain records of the above, if Defendants previously maintained such records.
14. When a resident's COVID test returns as positive, Defendants shall immediately remove the positive resident from the resident's housing unit for isolation. Defendants shall ensure that the positive resident is not present in any common areas of the housing unit from which the resident is being removed except for movement out of the housing unit.
15. Defendants shall provide clean and safe living conditions for residents in quarantine or isolation.
    a. Defendants shall provide clean and sanitized fabric clothing to residents in quarantine or isolation.
    b. Defendants shall provide a living environment with a temperature at or above 65 degrees for residents in quarantine or isolation.
    c. Defendants shall provide a living environment with hot water for residents in quarantine or isolation.
    d. Defendants shall ensure that residents on isolation or quarantine are given all required and / or prescribed medications and treatments that they were given prior to being moved to isolation or quarantine. Defendants shall ensure that that this happens no later than 48 hours after the residents are moved.
    e. Defendants shall provide a pest-free living environment to residents in quarantine or isolation.
    f. Defendants shall evaluate residents at intake for mental health issues, schedule residents for follow-up when needed, and provide sick call slips to residents to request mental health services when on quarantine or isolation.
16. Defendants shall quarantine the cellmates of residents who test positive.

**Limitations on procedures in which residents are given two hours or less of out-of-cell time:**

17. Defendants shall communicate to residents clearly the purpose and expected duration of any period in which residents are limited to two hours or less of out-of-cell time per day, as well as of isolation and quarantine.
    a. Defendants' agents shall maintain records of the above, if Defendants previously maintained such records.
18. Defendants shall not preemptively limit out-of-cell time to two hours or less per day as a response to COVID. Defendants shall limit out-of-cell time to two hours or less per day only when moving residents to different cohorts, sanitizing areas, conducting contract tracing, or when using a "lockdown" response for administrative or management purposes.
19. Whenever Defendants limit out-of-cell time to two hours or less per day, Defendants shall ensure that residents have access to running water and soap to wash their hands, clean water to drink, cleaning supplies of the type described in paragraph 25, *infra*, and phones.

3

20. Whenever Defendants limit out-of-cell time to two hours or less per day, Defendants shall continue to provide psychological services to residents with diagnosed mental-health conditions for which they received services prior to out-of-cell time being limited.

**Enhanced screening of residents who work in the facility:**

21. Defendants shall inquire on a daily basis of residents who work in the facility about whether they are experiencing any symptoms of COVID. Defendants shall maintain records reflecting that this inquiry was conducted for each day in which residents were on a work shift, as well as the residents' responses. Defendants shall provide "sick call" slips to residents and shall respond to any reports of residents experiencing any symptoms of COVID or any other medical issues.

**Education materials:**

22. Defendants shall provide to all residents and staff up-to-date information on COVID, including symptoms, reminders to report symptoms to staff, and reminders to wear masks and socially distance.
    a. This information shall be provided in a manner that can be understood by low-literacy residents, residents with disabilities, and non-English speaking residents.
    b. Defendants shall maintain records reflecting that this information was provided to all new admissions.

**Contact tracing:**

23. Defendants shall immediately send home any staff members who are within approximately six feet of positive residents for more than 15 minutes without donning PPE.
24. Defendants shall immediately inquire of, and follow up on a daily basis with, any "close contacts" who are working or reside in the Facilities about whether they are experiencing any symptoms of COVID.

**Cleaning:**

25. Consistent with the recommendation of the American Correction Association (which cross-references the CDC guidelines, at http://www.aca.org/ACA_Prod_IMIS/ACA_Member/Healthcare_Professional_Interest_Section/Copy_of_Coronavirus_COVID.aspx?New_ContentCollectionOrganizerCommon=4), Defendants shall make available on a daily basis EPA-registered disinfectants effective against COVID in an amount sufficient for all residents to clean their cells and common areas. If EPA-approved disinfectants are not available, Defendants shall make available on a daily basis diluted bleach (in concentrations detailed in CDC guidelines) or alcohol solutions (in concentrations detailed in CDC guidelines) in an amount sufficient for all residents to clean their cells and common areas.
    a. Defendants shall also offer on a daily basis paper towels sufficient for all residents to clean their cells and common areas.
    b. Defendants shall maintain records reflecting that sufficient cleaning supplies were distributed, if Defendants previously maintained such records.

26. Defendants shall sanitize, or assign residents who are appropriately trained to sanitize, common areas of each unit in between recreation sessions, including but not limited to the time between when a top tier comes out for recreation and when a bottom tier comes out for recreation.
    a. Defendants' agents shall maintain records of the above, if Defendants previously maintained such records.
27. Defendants shall provide a bar of soap to each resident free of charge. Defendants shall provide a bar of soap upon request to residents who run out of soap
28. Defendants shall make available hand sanitizer in a concentration detailed in CDC guidelines, free of charge, in the common areas of the housing units.
    a. Defendants shall maintain records of the above, if Defendants previously maintained such records.

**Mask-wearing and social distancing:**

29. Defendants shall provide at least two reusable / washable masks to residents on admission unless a resident arrives with one or more reusable / washable masks.
    a. Defendants shall maintain records reflecting that reusable / washable masks were distributed to every new resident who did not arrive with any reusable / washable masks.
    b. If a resident loses or misplaces a reusable / washable mask, or if the mask is otherwise damaged, Defendants shall replace the mask free of charge.
    c. When staff become aware of any resident who has fewer than two reusable / washable masks, staff will provide masks as soon as practicable to restore the resident to two reusable / washable masks.
30. Defendants shall require proper mask-wearing (i.e., both nose and mouth covered) among staff. Defendants shall verbally remind residents to properly wear masks during recreation time and when residents are moved through the Facilities. Defendants shall maintain records of the same.
31. Defendants shall communicate to any staff members who have failed to properly wear a mask the importance of wearing a mask within 24 hours of learning of the non-compliance.
32. Defendants shall verbally remind residents to socially distance during recreation time.

**Continuing efforts:**

33. On a weekly basis, Defendants shall provide Plaintiffs' counsel with the results of each round of testing for staff and residents and traffic histories for residents who have tested positive and for cellmates and other residents who shared recreation time with those residents, subject to an appropriate protective order.
34. Defendants shall permit an inspection of the facilities, as well as records, by Dr. Homer Venters or another expert upon a showing of reasonable cause for such inspection.

## II.     PRODUCTION OF DOCUMENTS

Defendants shall produce, if not already produced, the following documents by no later than March 30, 2021 (unless otherwise specified or qualified):

**Medical records, including:**

1. medical records of Plaintiffs,
   a. including Medication Administration Records and other records of who prescribed and distributed certain medications to Plaintiffs and when (qualifier: with these individuals' HIPAA-compliant consent in writing);
2. medication Administration Records for any resident in G unit (sometimes called the "cadre") who was prescribed medication related to hypertension or diabetes for residents in G unit from February 1 to 15, 2021 (qualifier: with these individuals' HIPAA-compliant consent in writing);

**Testing results and movement records of residents, including:**

3. testing results of residents from January 1, 2021, to present, including the housing units and cells of residents who tested positive;
4. housing and transfer ("traffic") records of residents who have tested positive since January 1, 2021, subject to an appropriate protective order;
5. traffic records of *cellmates* of residents who have tested positive since January 1, 2021, subject to an appropriate protective order (production by April 6, 2021);
6. traffic records of *other residents* who shared recreation time with residents who have tested positive since January 1, 2021, as well as any "close contacts" of such residents, subject to an appropriate protective order (production by April 6, 2021); and
7. the date and time that auto notification e-mails (including from "smartsheet tracking") were sent regarding all residents who tested positive since January 1, 2021;

**Testing results and movement records of staff, including:**

8. testing results of staff from January 1, 2021, to present, subject to an appropriate protective order;
9. post assignment worksheets for staff who tested positive from January 1, 2021, to present;
10. contact tracing within Defendants' Facilities for staff who were "close contacts" of positive staff members or residents since January 1, 2021, subject to an appropriate protective order;

**Quarantine and isolation planning documents, including:**

11. plans for quarantine and isolation;
    a. including for CDF and the Health Monitoring Facility (HMF) / Jail Industries Building (JIB); and
    b. including policies or procedures for how to create groups or cohorts of residents, how to prioritize residents for quarantine, how to move residents for quarantine and isolation, how long to wait before moving new residents into a cell from which a

    positive resident was removed, and which areas of the Facilities would be used for different purposes and when (including the cadre and its different uses over time);
12. temperature checks of the Facilities, including at HMF / JIB;

### Records of clothing distribution, including:

13. records of the clothing distributed to residents of HMF/ JIB from January 1, 2021, including the type of clothing (if such records are kept);

### Policies and procedures related to COVID, including:

14. policies and procedures governing COVID for these Facilities, including for contact tracing and the definition of "close contacts" of staff members and residents;

### Documentation on medically vulnerable residents and vaccination of residents, including:

15. a list of medically vulnerable residents of CDF;
16. the number of residents to whom CDF has offered vaccinations and the number of residents who agreed to vaccination;
17. plans of CDF to vaccinate remaining residents, including medically vulnerable residents and those eligible under Maryland guidelines, and including a ranked prioritization of residents;

### Documentation on vaccination of staff, including:

18. the number of CDF staff to whom CDF has offered vaccinations and those staff members' decisions;
19. plans of CDF to vaccinate remaining staff;

### Documentation of the physical layouts of Facilities, including:

20. layouts and plans of the Facilities, subject to an appropriate protective order;
21. photographs of the Facilities (including of the televisions, microwaves, phones, and other commonly touched items in common areas), subject to an appropriate protective order;

### Audit reports, performance reviews, and related documents (if these records exist and are in the possession, custody, or control of Defendants), including:

22. reports and results of any inspections and tests of the Facilities by the federal government since January 1, 2020;
23. reports and results from all performance reviews by the federal government since January 1, 2020, including performance ratings;
24. records prepared for or furnished to the federal government related to the inspection system created for the federal government since January 1, 2020;
25. records documenting any reduction in the price of the agreement and contract with the federal government since January 1, 2020;
26. records of any steps demanded by the federal government to come into compliance with the agreement and contract and any steps taken to comply with the agreement contract since January 1, 2020;

7

27. written reports or records of any other audit or inspection of the Facilities since January 1, 2020;

**Records requested by Dr. Venters:**

28. other records requested by Dr. Venters through Plaintiffs' counsel's e-mail titled "RE: Answers to Dr. Venters' questions," dated March 12, 2021;

**Continuing updates on these records:**

29. any other records requested by Dr. Venters or another expert or by Plaintiffs' counsel, if Plaintiffs show a reasonable need for these records.

### III.  OTHER DISCOVERY

Defendants shall produce the following individuals for depositions, timing to be determined:

1. Secretary Robert L. Green;
2. Warden Calvin Wilson;
3. Cpl. Greg LaCroix (provided that Cpl. LaCroix is not represented by a different set of attorneys by the time of scheduling his deposition);
4. Staff member who worked in G unit in January and February 2021, including during the time period that Ms. Cervellon and Ms. Hodges were housed in G unit (the "cadre");
5. Staff member who indicated to the United States Attorney's Office or to the U.S. Marshals Service in February that Ms. Hodges would *not* be housed at CDF (if such person exists, can be identified with reasonably certainty, and was employed or contracted by Defendants);
6. The Director of Clinical Services for DPSCS; and
7. Other individuals TBD.

### IV.  DISPUTE RESOLUTION AND ENFORCEMENT

The parties understand and agree that, if approved, and the Court consents, the Court will maintain jurisdiction of this action throughout the duration of the Agreement to enforce the provisions of the Agreement and to resolve disputes. The parties may seek specific performance of the Agreement. Prior to seeking enforcement or specific performance from the Court, the parties shall first seek to resolve disputes among themselves. If the parties cannot resolve disputes among themselves, the parties shall seek to resolve disputes with the mediation assistance of the Magistrate Judge.

_____
John Fowler
Counsel for Plaintiffs
On behalf of Plaintiffs

Dated: 3/17/2021

_____
Robert L. Green
Secretary for the Department of Public Safety and Corrections Services

Dated: 3/18/21

_____
Calvin Wilson
Warden, Chesapeake Detention Facility

Dated: 3/18/21

9